John R. Clemency (Bar No. 009646)
john.clemency@gknet.com
Lindsi M. Weber (Bar No. 025820)
lindsi.weber@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:    (602) 530-8500
*Attorneys for Benson K. Boreyko a/k/a B.K. Boreyko*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>Plaintiff,<br><br>v.<br><br>Vemma Nutrition Company, *et al.*<br><br>Defendants. | Case No. CV-15-01578-PHX-JJT<br><br>**OBJECTION OF BK BOREYKO TO TEMPORARY RESTRAINING ORDER AND REQUEST FOR PRELIMINARY INJUNCTION AND JOINDER IN POSITION OF VEMMA CORPORATE DEFENDANTS**<br><br>**Hearing Date:  September 15, 2015** |

Pursuant to this Court's Order entered on September 1, 2015 at Dkt. #40 (the "Order"), Defendant Benson K. Boreyko ("Boreyko"), by and through undersigned counsel, files the following objection to the *Ex Parte Application for Temporary Restraining Order With Asset Freeze, Appointment of a Receiver, and Other Equitable Relief* (Dkt. #9; the "FTC Application") filed by the Federal Trade Commission (the "FTC") on August 17, 2015 on an *ex parte* basis.  BK further joins in the Response and Objection (the "Vemma Response") filed by corporate Defendants Vemma Nutrition Company and Vemma International Holdings, Inc. (collectively, "Vemma" or the "Company Defendants").  Boreyko also joins in the evidentiary objections filed by the Company Defendants relating to the declarations and alleged evidence submitted in

support of the FTC Application.

This objection and joinder is supported by the materials submitted by the other Defendants, and the *Declaration of Benson K. Boreyko* (the "Boreyko Declaration") filed concurrently.

## I.   INTRODUCTION.

As established in the Boreyko Declaration and the evidentiary submissions of Vemma, the devastating effects of the draconian measures invoked by the FTC - without a stitch of prior notice or any attempt to address or resolve any alleged concerns - cannot be overstated.  The FTC sought and obtained *ex parte* relief based on an incomplete, misleading, and vastly insufficient presentation of the facts and circumstances regarding Vemma's operations (and success).

As more fully set forth in the Vemma Response, the FTC has failed to meet its burden (whether for *ex parte* relief or preliminary injunctive relief) to justify the extreme and crippling shutdown of a booming international business.  Mr. Boreyko will not repeat the same analysis or argument in this filing, but instead joins and incorporates the Vemma Response and supporting materials.

## II.   ADDITIONAL ARGUMENTS AND AUTHORITIES.

The FTC has ambushed Vemma and its principal, and improperly stripped Mr. Boreyko of his income, assets, and ability to earn a living.  Rather than cooperate to reach an agreeable pre-trial resolution, the FTC has prevented Mr. Boreyko from accessing funds to pay the most basis of expenses – including court-ordered family support obligations.[1]   There is no basis to deny Mr. Boreyko access to his own funds in order to fulfill obligations to his family and creditors.  After seeking a consensual solution with the FTC and Receiver and being denied, Mr. Boreyko now respectfully requests the assistance of this Court to provide a set amount of funds, according to an

---

[1] Counsel for Mr. Boreyko reached out to counsel for the FTC and Receiver for the release of a limited amount of funds to pay for ordinary and necessary family expenses and obligations.  The request was denied.

2

approved budget to be submitted under seal, to pay for living expenses and family support.

There is absolutely no evidence that Mr. Boreyko has concealed or attempted to dissipate assets (the exact opposite is true - Mr. Boreyko promptly provided the financial disclosures requested by the FTC along with supporting documentation), and there is no basis for the complete and total freeze of all assets and funds of Mr. Boreyko implemented unilaterally by the FTC.  Indeed, there is no need for any freeze of assets or funds of Mr. Boreyko.  If the Court believes there is a need for reasonable restraints on the transfer of assets owned by Mr. Boreyko, as stated in the Boreyko Declaration, Mr. Boreyko voluntarily will agree to reasonable constraints.  In point of fact, the only significant transfer of assets contemplated by Mr. Boreyko involved the infusion of his personal funds into Vemma to assist the company which short term cash flow needs.

Perhaps worst of all, the FTC absolutely should have known that what they submitted to this Court in support of their request for an *ex parte* asset freeze was insufficient as a matter of Ninth Circuit law.  The allegations made by the FTC do not satisfy either the burden for *ex parte* relief, or the burden for preliminary injunctive relief in the form of an asset freeze.

**A.    The FTC failed to satisfy the applicable standards for the relief sought.**

The standard employed to determine whether injunctive relief is appropriate depends upon whether the defendant has notice of the request for injunctive relief.  The FTC has not met its burden under either standard in this Case.

Section 13(b) of the Federal Trade Commission Act ("FTCA"), codified at 15 U.S.C. § 53(b),  permits the FTC to seek a TRO or injunction against a person or entity that it has reason to believe is violating or about to violate a provision of law enforced by the FTC.  Section 13(b) provides that "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining

order or preliminary injunction may be granted without bond . . . ." 15 U.S.C. § 53(b). This standard is less rigorous than the typical standard for a preliminary injunction because no showing of irreparable harm is required.  However, section 13(b) requires notice to the defendant.  Thus, to take advantage of this more lenient standard, the FTC must give notice.  Here, the FTC utterly failed to do so, not even a single phone call was made before freezing assets and shutting down a company.

In contrast, when the FTC seeks *ex parte* relief, it must satisfy Rule 65(b). *F.T.C. v. Onlineyellowpagestoday.com, Inc.*, No. C14-838 RAJ, 2014 WL 2694243, at *2 (W.D. Wash. June 10, 2014) ("the court has not found precedential authority relieving the FTC of its obligation to satisfy Rule 65(b) when seeking *ex parte* relief"); *see also F.T.C. v. Loewen*, No. C12-1207MJP, 2012 WL 4045207, at *1 (W.D. Wash. Sept. 13, 2012) (FTC initially sought an ex parte TRO but the court denied it because the FTC "did not meet the irreparable injury requirement of Federal Rule 65(b), which allows an ex parte TRO").  Under Fed. R. Civ. P. 65(b) (1), "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required." Accordingly, when the FTC seeks *ex parte* relief, the FTC must prove irreparable injury.  Here, they have failed to do so.

### 1. Ex Parte TRO

Generally, courts have been extremely hesitant to grant an *ex parte* TRO pursuant to Rule 65. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) ("courts have recognized very few circumstances justifying the issuance of an ex parte TRO").  An *ex parte* TRO may be granted where "notice to the defendant would render fruitless the further prosecution of the action." *Id.* Accordingly, in order for a party seeking an asset freeze to show likelihood of irreparable harm, the party

"must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). In those cases, the plaintiff must show that "defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing and must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Onlineyellowpagestoday.com, Inc.*, 2014 WL 2694243, at *2.

This exacting standard is not met by conclusory statements regarding FTC defendants generally – which is precisely what the FTC relied upon in this Case.  For example, in *Onlineyellowpagestoday.com, Inc.*, the court denied the FTC request for an *ex parte* TRO because the FTC had not provided evidence that the defendants "have a history of disregarding court orders, disposing of evidence, or transferring or hiding assets" or that individuals similar to the defendants have such a history. *Id.* A declaration from an attorney at the FTC stating that in the FTC's experience other defendants who engaged in fraudulent schemes will often withdraw funds was found to be a legal conclusion unsupported by any facts. *Id.* at *3. Because the overbroad TRO would have essentially shut down the defendants' business without requiring the FTC to "meet any standard of proof," the request for the TRO was denied. *Id.* at *4. This Case calls for the same result.

Rather, courts tend to find a likelihood of dissipation of assets only where the defendant has been directly involved in fraudulent behavior. "By way of example, some courts have found it appropriate to impose an asset freeze in the following types of situations: (1) where defendant had convinced his fellow directors and trustees to consent to diverting nearly $35 million from the company's account into his personal bank account, and (2) where defendant had a history of making intra-family transfers and had refused to disclose asset information in defiance of court order." *F.T.C. v. Millennium Telecard, Inc.*, No. CIV.A. 11-2479 JLL, 2011 WL 2745963, at *11 (D.N.J.

July 12, 2011); *see also F.T.C. v. Patriot Alcohol Testers, Inc.*, No. CIV. A. 91-11812-C, 1992 WL 27334, at *7 (D. Mass. Feb. 13, 1992) (the fact that at least one substantial physical asset was unaccounted for, and the individual's conduct in withdrawing funds prior to the freeze was sufficient to grant a preliminary injunction and asset freeze). Short of this type of egregious behavior, courts are hesitant to find a likelihood of dissipation of assets. The court in *Millennium Telecard* noted that even though there was evidence that the company's owner had disregarded the corporate form, these were isolated acts that by themselves did not "demonstrate a history or pattern of deceptive or fraudulent conduct" by the owner. *Id.* at *13. Accordingly, the court modified the asset freeze to allow the defendant some access to his personal assets. *Id.*

### 2. Preliminary Injunction

Even in circumstances where the FTC is not required to show a likelihood of irreparable harm, the FTC must show that there is at least a possibility that the defendant may dissipate assets. *F.T.C. v. Debt Solutions, Inc.*, No. C06-298JLR, 2006 WL 1041996, at *7 (W.D. Wash. Apr. 3, 2006). "Because Congress did not provide for an automatic asset freeze for violations of the FTCA, the court holds that to show a 'possibility' that a Defendant will dissipate assets, the FTC cannot rely on conjecture." *Id.* Here, the FTC has not shown even a possibility that Mr. Boreyko will dissipate assets, and has relied instead on pure conjecture.

It is not enough to rely on the fact that the individual defendant is the subject of allegations of violations of the FTCA or even that a company has dissipated assets. In *Debt Solutions*, 2006 WL 1041996, at *7, the court found sufficient evidence to support an inference that the company would dissipate financial assets absent an asset freeze - but this did not automatically subject the owner to the same asset freeze. Rather, the FTC "must offer evidence specific to the Defendant that reveals a possibility that the Defendant will dissipate assets." *Id.* There, the court found no evidence that the individual defendants would dissipate assets:

> At best, the FTC surmises that because the individual Defendants are accused of violations that could subject them to substantial liability, they will dissipate assets. If this were sufficient to establish a "possibility" of dissipation, then every defendant subject to an injunction under the FTCA would automatically be subject to an asset freeze.

*Id.* A fair reading of the FTC Application and papers reveals that the FTC had and has no basis to support an asset freeze against Mr. Boreyko (or Vemma, for that matter).

**B.      The FTC Application and related submissions do not allege any basis for the drastic relief sought.**

What makes the FTC's conduct in this Case even more egregious is the fact that the FTC previously investigated Mr. Boreyko in connection with New Vision, and there was absolutely no evidence or indication that Mr. Boreyko or New Vision attempted to dissipate assets, conceal funds, or made any other attempt to be anything other than up front and transparent.  Likewise, a Vemma affiliate in Italy was subjected to a similar process by the Italian authorities (but there, the Italian authorities did not unilaterally crater the business, did not take drastic and unwarranted measures, and instead engaged in a process that resulted in continued operation and success for the company and its members and employees).  The Italian authorities similarly did not find any evidence that anyone associated with Vemma (Mr. Boreyko or otherwise) did anything other than cooperate fully with the investigation process.

Based on the applicable authorities, and the utter dearth of any evidence or even any allegation (other than pure conjecture and irrelevant speculation) to support the relief sought by the FTC, this particular asset freeze obtained by the FTC may be the most reckless asset freeze possible when considering the facts and circumstances of this Case and the applicable law.

The FTC's actions have ruined a company, destroyed reputations (including Mr. Boreyko's), and left multitudes of employees jobless – all without any basis or evidence to support these drastic and unsubstantiated actions, and certainly without meeting the applicable standards and burden that the FTC must bear.

### III.   CONCLUSION.

As Mr. Boreyko stated in his own words:

> After my 21 years of successfully operating as a CEO of two Direct Selling Association ("DSA") member network marketing companies, generating hundreds of local jobs, creating part time incomes for tens of thousands of families around the world - to not even be warned by the FTC of potential problems is unthinkable in this country.  To shut down my company worldwide, freeze all my assets and accounts, to label me a flight risk without any basis whatsoever, to destroy my company, my brands and my reputation around the world in the media should never be allowed to happen before a simple phone call.  The damage to families, the damage to my family, and the damage to my reputation cannot be undone.   21 years of very hard work, massive risk taking, and a tremendous amount of commitment deserves better. The very nature of a pyramid scheme is to harm people. Vemma, at its core mission, exists to help people. I know the difference, and I would never engage in the latter.

*See* Boreyko Declaration at ¶30.

The FTC has failed miserably to establish a likelihood of success on its claims that: (i) Vemma is a pyramid scheme; (ii) Vemma and Mr. Boreyko made misleading representations concerning income potential for Vemma Affiliates; (iii) Vemma or Mr. Boreyko would have dissipated assets had they received basic notice of the FTC Action; and (iv) the FTC has any right to pretrial relief in this case.  As a result, Mr. Boreyko respectfully requests that the Court:

    A.    Dissolve the TRO immediately;

    B.    Deny any further injunctive relief requested by the FTC in this action; and

    C.    Grant Mr. Boreyko such other and further relief as is just and proper under the circumstances of this case.

Respectfully submitted this 10th day of September 2015.

                                  GALLAGHER & KENNEDY, P.A.

                                  By */s/   John R. Clemency*
                                        John R. Clemency
                                        Lindsi M. Weber
                                        2575 East Camelback Road
                                        Phoenix, Arizona 85016-9225
                                        *Attorneys for Benson K. Boreyko a/k/a B.K. Boreyko*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September, 2015, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

                                        */s/  Gloria Kannberg*