**Quarles & Brady** LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

John A. Harris (#014459)
john.harris@quarles.com
Kevin D. Quigley (#015972)
kevin.quigley@quarles.com
Edward A. Salanga (#20654)
edward.salanga@quarles.com

*Attorneys for Defendants Vemma Nutrition Company and Vemma International Holdings, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Federal Trade Commission, | NO. CV-15-01578-PHX-JJT |
| Plaintiff, | **CORPORATE DEFENDANTS' QUARTERLY REPORT DATED MARCH 18, 2016** |
| vs. | |
| Vemma Nutrition Company, *et al.*, | |
| Defendants. | |

Pursuant to Section V(B) of the Court's Preliminary Injunction Order (Doc. 118), entered September 18, 2015 ("the Order"), Vemma Nutrition Company and Vemma International Holdings, Inc. (collectively, "Vemma" or the "Corporate Defendants") submit this quarterly report describing the Corporate Defendants' business operations over the past three months.

**I.     BACKGROUND**

As described in detail in the Corporate Defendants' Quarterly Report Dated December 18, 2015 (Doc. 180) (the "December Report"), the Temporary Receiver's

1  shutdown of worldwide operations on August 24, 2015, was devastating to the business.
2  However, since restarting operations on a limited basis in October 2015, Vemma has been
3  able to slowly rebuild its business, starting with its North American operations.  As shown
4  below, Vemma's gross North American sales from November 2015 to February 2016
5  have increased by almost 65%:

|   |   |
|---|---|
| November 2015 | $723,750[1] |
| December 2015 | $899,002 |
| January 2016 | $854,772 |
| February 2016 | $1,192,726 |

## II.  FINANCIAL ANALYSIS

The following table sets forth Vemma's revenue and operating results for December 2015 through February 2016. Vemma is now generating positive net operating income before depreciation.  The monthly loss shown on the Vemma income statement is solely a result of extraordinary expense that arose from the Temporary Receiver's worldwide shutdown of the business.  Vemma continues to address these expenses.

///

///

---

[1] In the December Report, Vemma disclosed North American sales of $701,927 for November 2015.  However, Vemma has since determined that this figure did not include Canadian sales of approximately $22,000.

| North America | December 2015[2] | January 2016 | February 2016 |
|---|---:|---:|---:|
| Revenue: | 899,002 | 854,772 | 1,192,726 |
| Cost of Sales: | 327,577 | 344,524 | 502,188 |
| Operating Expenses: | 100,125 | 90,213 | 183,027 |
| General and Administrative Expenses | 813,015 | 395,809 | 511,387 |
| Operating Income/(Loss) | (341,395) | 24,226 | (3,876) |
| Other Income and (Expense) | (91,395) | (79,386) | (77,953) |
| Net Operating Income/(Loss) | (433,109) | (55,160) | (81,829) |
| Operating Income/(Loss) Before Depreciation | (331,287) | 19,329 | (7,491) |
| Extraordinary Expense | 2,230,586[3] | 0 | (1,005,042)[4] |
| Income/(Loss) before income taxes | (2,663,694) | (55,160) | (1,086,871) |

Vemma's revenue for March 1-15, 2016, is $538,076.97.

---

[2] The results for December 2015 do not yet reflect final year-end adjustments. Vemma is working with its new tax accountants on closing fiscal year 2015.

[3] December extraordinary expenses include the write-off of inventory for international markets closed by the Temporary Receiver, expired inventory, inventory held at now closed offices, physical inventory adjustments, and adjustments for prior year accumulated depreciation.

[4] As a result of the Temporary Receiver shut down of the business worldwide, Vemma's long term lease at its 51,000 square foot premises went into default. The shut down of the business also resulted in Vemma defaulting on its Equipment Loan with Wells Fargo Equipment Finance, Inc. ("WFEF"). In exchange for a reduction in monthly rent from almost $80,000 to $10,000 and a change in the term of the lease from a 7 year lease to a month-to-month lease, Vemma agreed to release $1,250,000 in funds held as a Letter of Credit for the benefit of the landlord. In connection with the Equipment Loan, Vemma reached a forbearance agreement with WFEF which provided for, among other things, a reduction in monthly payments from $47,831.69 per month to $25,000 per month. Accordingly, Vemma has addressed the immediate issues regarding its office lease and Equipment Loan.

The chart below sets forth Vemma's financial position from an operational cash flow standpoint for the months of January 2016 and February 2016. Only cash actually received from sales is recorded. Deposits from other sources are excluded.[5] Vemma receives its credit card receipts about a week and a half in arrears and its foreign merchant processor applies a 5% hold back on all sales. Accordingly, the monthly revenue numbers for January and February 2016 set forth in the chart above will be higher than the actual cash receipt numbers set forth blow. The chart below also reflects payment for current invoices and does not include payments for accounts payable in existence at the time the Temporary Receiver shut down the business and other extraordinary expenses resulting from the Temporary Receiver's shut down of the business.

|  | January-16 | February-16 |
|---|---|---|
| **Cash In from Sales** | **$745,193.62** | **$956,970.43** |
| Payroll | $(160,088.87) | $(160,399.98) |
| Commissions | $(8,394.63) | $(47,372.70) |
| Outside Warehouses | $(33,567.40) | $(42,646.78) |
| Rent | $(13,670.82) | $(13,941.03) |
| Commercial Insurance | $(24,062.41) | $(24,062.41) |
| FedEx | $(92,059.02) | $(118,199.51) |
| Direct DC | $(5,000.00) | $ - |
| IT Expenses | $(36,196.28) | $(36,665.88) |
| WF Financing | $ - | $(10,000.00) |
| Medical Benefits | $(14,313.28) | $(14,313.28) |
| Contract Labor | $(4,860.00) | $(10,910.00) |
| Phone Bills | $(17,531.15) | $(17,781.36) |
| Equipment Rental | $(4,702.44) | $(4,702.44) |
| Vehicles | $(4,402.18) | $(4,402.18) |
| Product | $(237,034.50) | $(148,979.00) |
| Product Freight | $(4,706.50) | $(12,176.50) |
| Sales Taxes | $(42,000.00) | $(43,398.49) |

---

[5] Examples of other deposits received by the company include refunds of credit card reserves held by credit card processors, and loans from shareholder Benson Keith Boreyko. On January 15, 2016, Mr. Boreyko loaned the company $200,000.

| | | |
|---|---|---|
| Lawyers | $(23,820.55) | $(104,272.00) |
| Misc Expenses | $(8,417.00) | $(9,855.38) |
| | | |
| Total Expenses | $(734,827.03) | $(824,078.92) |
| | | |
| **Net Cash** | **$10,366.59** | **$132,891.51** |

Prior to the FTC action against Vemma, Vemma's commission expense averaged approximately 42% of the Company's monthly sales revenue. Commission expense for December 2015 through February 2016 were as follows:

| Month | Revenue | Monthly Commission Expense | % of Revenue |
|---|---|---|---|
| December 2015 | $899,002 | $36,576[6] | 4% |
| January 2016 | $854,772 | $16,742 | 2% |
| February 2016 | $1,192,726 | $91,658[7] | 8% |

Despite a dramatic decrease in monthly Commission expense, from 42% to less than 5% average over the last 3 months, gross monthly sales rose almost 65% from November 2015 through February 2016. Clearly, these sales are not motivated by a desire to earn commissions, but by a demand for Vemma's innovative, nutritional products.

III. **MERCHANT ACCOUNT**

As Vemma previously noted in the December Report, from an operating standpoint, Vemma's biggest challenge in restarting its business was its difficulty in securing a merchant bank to process its credit card orders. Due to the FTC action and Temporary Receiver shut down of the business, Vemma has been unable to secure a domestic merchant account. Fortunately, Vemma has been able to continue to process with Paysafe, a foreign merchant, processing through the Bank of Mauritius. However,

---

[6] December commissions expense included commissions on revenue generated in October, November, and December.

[7] In February 2016, a new compensation plan went into effect. That plan is described in greater detail at Part VI of this Report.

this foreign merchant processor (1) costs significantly more than the domestic processor Vemma was contracted with before the shutdown; (2) requires a larger reserve than Vemma's former domestic processor;[8] (3) results in a higher rate of credit card declines;[9] and (4) could not process auto-delivery orders until January 2016.[10] All of the foregoing has obviously had a negative effect on Vemma's net revenues.

**IV.   CHARGE BACKS**

Notwithstanding the continuing FTC litigation and the Temporary Receiver's decision to shut the business down worldwide, credit card charge backs for Vemma's products are extremely low. Vemma's charge backs for the months December 2015 through February 2016 averaged $2,755 per month, which constituted just 0.28% of monthly sales.

| Month | Total of Charge backs | % of Monthly Sales |
|---|---|---|
| December 2015 | $4,084.51 | 0.54% |
| January 2016 | $3,670.53 | 0.50% |
| February 2016 | $2,055 | 0.17% |

---

[8] Paysafe charges a flat fee of $.50, plus 6.95% to 7.95% per transaction with a rolling six-month reserve of 5%; whereas Vemma's pre-shutdown domestic merchant processor was charging a flat fee of $.08, plus 2.5% per transaction with only a 3% reserve.

[9] The reason for the higher decline rate is described in greater detail in Vemma's December Report at p. 6.

[10] As a foreign merchant processor, Paysafe's services were not integrated with either Vemma's Customer Relationship Management System or Vemma's gateway, authorize.net. As a result, Vemma could not process its monthly Auto Delivery Orders from August 24, 2015 through January 2016. Vemma completed integrating Paysafe's services into the Company's Information Technology platform in January 2016 and only started processing monthly Auto Delivery orders in late January, 2016.

### V. CUSTOMERS AND AFFILIATES

Despite the significant operational obstacles discussed above, 2,985 new Customers and 25 new Affiliates have joined Vemma since the Company restarted its operations on October 8, 2015.

### VI. COMPENSATION PLAN

In February 2016, Vemma implemented a revised Compensation Plan. The FTC reviewed the new compensation plan and did not object prior to its implementation. The new plan emphasizes retail sales and is simple in scope. The 51/49 Customer sales rule is the overriding factor in determining if commissions are paid. To become or remain an Affiliate, the new participant is required to pay an annual fee of $19.95 for Vemma's Internet tools and develop two teams (legs). Customers join for free. The Plan provides that if an Affiliate did not pay its $19.95 annual fee, after notice, the Affiliate would be converted to Customer status. The person could immediately convert back to Affiliate status by paying the $19.95 fee.

### VII. LEGAL

As previously noted the FTC opened a separate investigation into Vemma to review its compliance with the 1999 Consent Order dated March 3, 1999, in *In re New Vision International*. The company has complied with the request. In addition, the Internal Revenue Service has been auditing Vemma for tax years ending 2012 and 2013.

### VIII. THE FUTURE

Vemma continues to address the issues created by the Temporary Receiver's shutdown of the business. Monthly sales have increased almost 65% since November 2015. Once the Company completes its resolution of the extraordinary expenses caused by the Temporary Receiver's actions, the Company will be operating in a profitable manner. Due to demand for its innovative nutritional products and customer loyalty, Vemma anticipates that its sales will continue to grow.

DATED this 18th day of March, 2016.

        QUARLES & BRADY LLP
        Renaissance One
        Two North Central Avenue
        Phoenix, AZ  85004-2391


        By *s/ Edward A. Salanga*
          John A. Harris
          Kevin D. Quigley
          Edward A. Salanga

*Attorneys for Defendants Vemma Nutrition Company, Vemma International Holdings, Inc.*

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a copy was electronically submitted to counsel at the e-mail addresses below:

| **Counsel for Plaintiff, Federal Trade Commission:** | **Counsel for Receiver Robb Evans & Associates, LLC:** |
|---|---|
| Jonathan E. Neuchterlein<br>General Counsel<br><br>Angeleque P. Linville<br>alinville@ftc.gov<br><br>Jason C. Moon<br>jmoon@ftc.gov<br><br>Anne D. Lejeune<br>alejeune@ftc.gov<br><br>Emily B. Robinson<br>erobinson@ftc.gov<br><br>**Counsel for Defendants Tom and Bethany Alkazin:**<br><br>Coppersmith & Brockelman PLC<br>Keith Beauchamp<br>kbeauchamp@cblawyers.com<br><br>Marvin Christopher Ruth<br>mruth@cblawyers.com | Dentons US LLP<br>Gary Owen Caris<br>gary.caris@dentons.com<br><br>Lesley Anne Hawes<br>lesley.hawes@dentons.com<br><br>Joshua S. Akbar<br>joshua.akbar@dentons.com<br><br>**Counsel for Defendant Benson K. Boreyko:**<br><br>John R. Clemency<br>Gallagher & Kennedy<br>john.clemency@gknet.com<br><br>Lindsi Michelle Weber<br>lindsi.weber@gknet.com |

*s/ Donna Lockwood*