# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Federal Trade Commission**, <br><br> v. <br><br> **Vemma Nutrition Company**, *et al.* | **No. CV-15-01578-PHX-JJT** <br><br> **STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AGAINST VEMMA NUTRITION COMPANY, VEMMA INTERNATIONAL HOLDINGS, INC., AND BENSON K. BOREYKO** |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b).  The Commission and Corporate Defendants and Individual Defendant Benson K. Boreyko (collectively, "Defendants") stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment against Vemma Nutrition Company, Vemma International Holdings, Inc., and Benson K. Boreyko ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, by operating an unlawful pyramid scheme, by making false and misleading income claims, by failing to disclose material information, and by providing participants in Defendants' scheme with the means and instrumentalities to engage in deceptive acts and practices.

3.       Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "**Business Venture**" means any written or oral business arrangement, however denominated, whether or not covered by 16 C.F.R. Part 437, that consists of the payment of any consideration for the right or means to offer, sell, or distribute goods or services (whether or not identified by a trademark, service mark, trade name, advertising

2

or other commercial symbol).  The definition of Business Venture includes Multi-level
Marketing Programs.

    B.    "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is
difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers,
including in all of the following ways:

    1.    In any communication that is solely visual or solely audible, the
disclosure must be made through the same means through which the
communication is presented.  In any communication made through both visual and
audible means, such as a television advertisement, the disclosure must be
presented simultaneously in both the visual and audible portions of the
communication even if the representation requiring the disclosure is made in only
one means.

    2.    A visual disclosure, by its size, contrast, location, the length of time
it appears, and other characteristics, must stand out from any accompanying text or
other visual elements so that it is easily noticed, read, and understood.

    3.    An audible disclosure, including by telephone or streaming video,
must be delivered in a volume, speed, and cadence sufficient for ordinary
consumers to easily hear and understand it.

    4.    In any communication using an interactive electronic medium, such
as the Internet or software, the disclosure must be unavoidable.

    5.    On a product label, the disclosure must be presented on the principal
display panel.

6.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

C.      "**Covered Product**" means any dietary supplement, food, or drug, including, but not limited to, Vemma Health, Verve, and Bod•ē drinks, and any nutritional product purporting to contain the "VEMMA" formula of vitamins, essential minerals, mangosteen, and aloe.

D.      "**Defendants**" means the Individual Defendant and the Corporate Defendants, individually, collectively, or in any combination.

1.      "**Corporate Defendants**" means Vemma Nutrition Company, Vemma International Holdings, Inc., and their successors and assigns.

2.      "**Individual Defendant**" means Benson K. Boreyko, also known as B. K. Boreyko.

E.      "**Dietary supplement**" means:

4

1.      Any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or

2.      Any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that is a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

F.      "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; provided that the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

G.      "**Liquidating Receiver**" means Robb Evans and Associates LLC.

H.      "**Monitor**" means the Court-appointed monitor in this action, Robb Evans and Associates LLC.

I.      "**Multi-level Marketing Program**" means any marketing program in which participants pay money to the program promoter or purchase products in return for

which the participants obtain the right to: (1) recruit additional participants, or have additional participants placed by the promoter or any other person into the program participant's downline, tree, cooperative, income center, or other similar program grouping; (2) sell goods or services; and (3) receive payment or other compensation that is based, in whole or in part, upon the payments or purchases made by those in the participant's downline, tree, cooperative, income center or similar program grouping.

J.      "**Reliably reported**," for a human clinical test or study ("test"), means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

## ORDER

### I.      PROHIBITED MARKETING PROGRAMS

**IT IS ORDERED** that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering a pyramid scheme, Ponzi scheme, or chain marketing scheme, whether directly or through an intermediary.

### II.      BAN ON CERTAIN BUSINESS PRACTICES

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from advertising, marketing, promoting, or offering, or assisting in the advertising, marketing, promoting, or offering of a Business Venture that:

A.      Pays any compensation for recruiting new participants into the Business Venture;

B. Links or ties a participant's compensation, or eligibility to receive compensation, to that participant's purchase of goods or services; or

C. Pays a participant any compensation related to the sale of goods or services in a fixed pay period unless the majority of the total revenue generated during such period by the participant and others within the participant's downline is derived from sales to persons who are not participants in the Business Venture.

## III.   PROHIBITION AGAINST MISREPRESENTATIONS OR UNSUBSTANTIATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly:

A. In connection with the advertising, marketing, promoting, or offering of any Business Venture, are permanently restrained and enjoined from:

1. Misrepresenting or assisting others in misrepresenting, including by providing others with the means and instrumentalities with which to misrepresent, expressly or by implication:

a. That participants will or are likely to earn substantial income from selling any good or service or by participating in the Business Venture;

b. The amount of sales, income, or profit a participant earned by selling any good or service or by participating in the Business Venture;

      c.      That participants who do not earn significant income fail to devote substantial or sufficient effort; or

      d.      Any other fact material to participants concerning the Business Venture, such as: the total costs to participate, including trainings, brochures, and sales aids; any material restrictions, limitations, or conditions on operating the Business Venture; or any material aspect of its performance, efficacy, nature, or central characteristics;

      2.      Making any representation, expressly or by implication, regarding the amount or level of income, including full-time or part-time income, that a participant can reasonably expect to earn unless the representation is non-misleading and, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence sufficient to substantiate that the representation is true.  Implied representations regarding the amount or level of income that a participant reasonably can expect to earn include, but are not limited to, representations involving and images used to show an improved lifestyle;

B.      In connection with the advertising, marketing, promoting, or offering of any good or service, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, including by providing others with the means and instrumentalities with which to misrepresent, expressly or by implication:

      1.      The total costs to purchase, receive, or use, and the quantity of, the goods or services;

2.      Any material restriction, limitation, or condition to purchase,

receive, or use the goods or services;

3.      Any material aspect of the performance, efficacy, nature, or central

characteristics of the goods or services;

4.      Any material aspect of the nature or terms of the seller's refund,

cancellation, exchange, or repurchase policies; or

5.      Any other material fact;

C.      In connection with the advertising, marketing, promoting, or offering of

any Covered Product, are permanently restrained and enjoined from making, or assisting

others in making, expressly or by implication, including through the use of a product or

program name, endorsement, depiction, or illustration, any representation that such

product cures, mitigates, or treats any disease; unless the representation is non-misleading

and, at the time of making such representation, Defendants possess and rely upon

competent and reliable scientific evidence to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence shall consist of

human clinical testing of the Covered Product, or of an Essentially Equivalent Product,

that is sufficient in quality and quantity based on standards generally accepted by experts

in the relevant disease, condition, or function to which the representation relates, when

considered in light of the entire body of relevant and reliable scientific evidence, to

substantiate that the representation is true.  Such testing shall be: (1) randomized, double-

blind, and placebo-controlled; and (2) conducted by researchers qualified by training and

experience to conduct such testing.  In addition, all underlying or supporting data and

9

documents generally accepted by experts in the relevant field as relevant to an assessment of such testing as described in the Section titled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission.  Defendants shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

   D. Nothing in this Order shall prohibit Defendants from:

    1. Making any representation for any drug that is permitted in labeling for such drug under any tentative or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

    2. Making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

**IV. PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES**

  **IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including, but not necessarily limited to:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.      All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.      Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.      All documents referring or relating to any statistical analysis of any test data, including, but not limited to, any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.      All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers. Provided, however, the preceding preservation requirement shall not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

11

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures shall be documented in writing and shall contain administrative, technical, and physical safeguards appropriate to Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## V.   PROHIBITION AGAINST MATERIAL OMISSIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering of any Business Venture, are permanently restrained and enjoined from:

A.   Failing to disclose, clearly and conspicuously, to any prospective participant in any Business Venture to whom any earnings, profits, or sales volume claims have been made:

1.   The number and percentage of Business Venture participants who have made a profit through their participation in the Business Venture;

2.   The beginning and ending dates when the represented earnings, profits, or sales volume were achieved; and

3.   The average and median amount of profit made by each Business Venture participant; and

12

B.      Failing to disclose, clearly and conspicuously, before any potential participant pays any money to the Defendants, all information material to the decision of whether to participate in the Business Venture, including, but not limited to, whether the Defendants have a refund or buyback policy and if so, all material terms and conditions of the refund or buyback policy, including the specific steps consumers must follow to obtain a refund or buyback.

## VI.    MONITORING COMPLIANCE WITH ORDER

**IT IS FURTHER ORDERED** that Defendants, in connection with the advertising, marketing, promoting, or offering of any Business Venture, are hereby permanently restrained and enjoined from:

A.      Failing to take reasonable steps sufficient to monitor and ensure that the Defendants' agents, representatives, employees, independent contractors, affiliates and participants comply with Sections I-V of this Order.  Reasonable steps shall include obtaining initial and biennial assessments and reports ("Assessments") from a qualified, objective, independent third-party auditor, who uses procedures and standards generally accepted in the profession.  The auditor selected to conduct such Assessments and prepare such reports shall be Kotzin Valuation Partners, LLC, or any other auditor approved by the Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580, in his or her sole discretion.  The reporting period for the Assessments shall cover: (i) the first one hundred and eighty (180) calendar days after entry of the Order for the initial Assessment, and (ii) each two

(2) year period thereafter for twenty (20) years after entry of the Order.  Each Assessment shall:

      1.     Set forth the specific monitoring and enforcement controls that the Defendants have implemented and maintained during the reporting period;

      2.     Explain whether such monitoring and enforcement controls are appropriate to Defendants' size, complexity, and the nature and scope of Defendants' activities, including the activities of Defendants' agents, representatives, employees, independent contractors, affiliates and participants;

      3.     Explain whether the monitoring and enforcement controls that have been implemented meet or exceed the protections required by Sections I-V of this Order; and

      4.     Certify whether the monitoring and enforcement controls are operating with sufficient effectiveness to ensure compliance with Sections I-V of this Order and whether the controls have so operated throughout the reporting period.

Each Assessment shall be prepared and completed within sixty (60) calendar days after the end of the reporting period to which the Assessment applies.  Defendants shall provide each Assessment to the Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580, within ten (10) calendar days after the Assessment has been prepared.

B.      Failing to promptly and fully investigate any complaint that relates to the subject matter of this Order received by the Defendants and to notify the complainant of the resolution of the complaint and the reason therefore.

C.      Failing to take corrective action with respect to any person to whom this Order applies who is not complying with the Order.

## VII.   MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of Two Hundred and Thirty-Eight Million Dollars ($238,000,000) is entered in favor of the Commission against Individual Defendant and Corporate Defendants, jointly and severally, as equitable monetary relief.

B.      In partial satisfaction of the monetary judgment:

1.      Individual Defendant is ordered to, within 7 calendar days of entry of this Order:

a.      Pay to the Commission Two Hundred and Sixteen Thousand, Eight Hundred and Thirty-Nine Dollars ($216,839); and

b.      Pay to the Commission Two Hundred and Fifty-Three Thousand, Two Hundred and Ninety-Seven Dollars ($253,297) from the account at Alliance Bank ending in 1845 that is separately escrowed under the terms of the Court's February 17, 2016 Order (Dkt. 208).

Such payments must be made by electronic fund transfer in accordance with instructions to be provided by a representative of the Commission.

2.      Individual Defendant is ordered to cooperate fully and take all necessary steps to transfer to the Liquidating Receiver appointed by the Court pursuant to Section IX of this Order (or to such person designated in writing by the Liquidating Receiver), possession and legal and equitable title to any or all of the assets listed on Attachment A to this Order that the Liquidating Receiver, in its sole discretion, shall determine to have a fair market value in excess of the asset's existing liabilities.  Such transfer shall occur within 30 calendar days of Individual Defendant's receipt of a written demand from the Liquidating Receiver directing the transfer of an asset listed on Attachment A of this Order or at such later date as the Liquidating Receiver shall direct, subject to Subsection f., below.

a.      Individual Defendant shall execute documents, provide information, and produce any title, deed, registration, appraisal, inspection, certificate of insurance, records pertaining to mortgages or liens, or other items reasonably requested by the Liquidating Receiver to determine the value or marketability of any asset or to effectuate the transfer of possession and title of any asset listed on Attachment A.  Individual Defendant shall comply with such reasonable requests of the Liquidating Receiver within 3 business days of receiving such a request.

b.      Following transfer of title and possession of assets listed on Attachment A, the Liquidating Receiver, or the person designated to receive title and possession, shall be responsible for all maintenance, utilities, taxes, insurance, mortgage payments, and all other expenses

related to the assets and shall timely make all payments due.

c.       Individual Defendant represents that no encumbrances to any of the assets listed on Attachment A have been added since the execution of his sworn financial statement dated July 11, 2016, and that he will not add any encumbrances after signing this Order.  Individual Defendant further represents that he shall maintain and take no action to diminish the value of any asset on Attachment A, including any structures, fixtures, or appurtenances thereto.

d.       Until Individual Defendant transfers title and possession of the assets listed on Attachment A, he shall remain current on all amounts due and payable, including but not limited to all mortgage, tax, insurance, assessments, reasonable and necessary maintenance, and similar fees. Individual Defendant shall notify the appropriate insurance carrier(s) immediately upon entry of this Order of the appointment of the Liquidating Receiver and request that the Liquidating Receiver and Commission be added to any insurance policy covering any asset to be transferred under this Subsection as additional insureds.

e.       In order to transfer possession of any real property, Individual Defendant shall vacate, or cause any tenants or occupants to vacate, the property in "broom clean condition" and deliver all keys and security codes, if any, to the Liquidating Receiver, or its designee, along with written notice that possession is surrendered.

17

f.      The Liquidating Receiver shall have 60 calendar days from entry of this Order to determine the value or marketability and to demand the transfer of possession and title of any asset listed on Attachment A.

3.      Individual Defendant is ordered to sell to a third party in an arms-length transaction for fair market value, or to surrender to lienholder, the real property located at 3083 Ocean Street, Carlsbad, California 92008, bearing the legal description U.S. 1 PER DOC 86-609892, undivided interest in Parcel 1 Tr 14585, in the County of San Diego ("Carlsbad Property") and to pay to the Commission all net proceeds (as described in Subsection g. below), if any, relating to such transfer or surrender.

a.      The sale or surrender of the Carlsbad Property shall be completed within 120 calendar days of entry of this Order or, for good cause shown, within such time as the Court shall otherwise order.

b.      Individual Defendant represents that no encumbrances to the Carlsbad Property have been added since the execution of his sworn financial statement dated July 11, 2016, and that he will not add any encumbrances after signing this Order.  Individual Defendant further represents that he shall maintain and take no action to diminish the value of the Carlsbad Property, including any structures, fixtures, or appurtenances thereto.

c.      Until Individual Defendant transfers or surrenders title and possession of the Carlsbad Property, he shall remain current on all amounts

18

due and payable, including but not limited to all mortgage, tax, insurance, assessments, reasonable and necessary maintenance, and similar fees. Individual Defendant shall notify the appropriate insurance carrier(s) immediately upon entry of this Order of the appointment of the Liquidating Receiver and request that the Liquidating Receiver and Commission be added to any insurance policy covering the Carlsbad Property as additional insureds.

d.      To secure Individual Defendant's obligation to the Commission under Subsection VII.B.3 above, upon entry of judgment, the FTC shall have the right to record a judgment lien against the Carlsbad Property in accordance with 28 U.S.C. § 3201.

e.      Individual Defendant must provide the Commission with written proof of the transfer or surrender, including the date of the event, the sales price or amount of consideration, if any, and name, address, and contact information of the purchaser or recipient of the property.

f.      To effectuate the sale of the Carlsbad Property in accordance with this Subsection, upon receipt of an executed letter of intent to purchase the property and settlement statement, the Commission will execute and deliver to the closing agent a release of any judgment lien, which shall be held in escrow contingent upon the closing of the sale, and recorded thereafter if the sale closes.

g.      If the Carlsbad Property is sold, any net proceeds after

payment of ad valorem taxes, transfer fees, recording fees, other fees, and liens recorded prior to July 11, 2016, shall be paid to the Commission at closing, by electronic fund transfer in accordance with instructions to be provided by a representative of the Commission.

4.      Individual Defendant is ordered to transfer to the Commission all federal tax refunds for the 2015 tax year and for any prior tax year received after he executed his sworn financial statement, dated July 11, 2016.  Individual Defendant must engage and cooperate with an accounting firm to prepare and file his 2015 tax return within 120 calendar days of the entry of the Order.  He must request that the Internal Revenue Service send any such refunds directly to the Commission by electronic fund transfer in accordance with instructions provided by a representative of the Commission, including a notation that it is in reference to FTC File No. X150057.  If the IRS cannot make electronic fund transfers to the Commission, Individual Defendant must pay any such refunds directly to the Commission by electronic fund transfer within 7 calendar days of his receipt. Within 3 business days of filing, Individual Defendant shall send to the Commission copies of all federal tax returns (including any subsequently filed amended returns) filed for the 2015 tax year or any prior tax year.  Within 14 calendar days of receipt of a written request from a representative of the Commission, Individual Defendant shall take all necessary steps (such as filing a completed IRS Form 4506 or 8821) to cause the IRS to provide information to the

Commission.  The Commission may request any information, including amended tax returns and any other filings related to compliance with this provision, that Individual Defendant has the authority to release.

5.    Corporate Defendants are ordered to cooperate fully and take all necessary steps to transfer to the Liquidating Receiver appointed by the Court pursuant to Section IX of this Order (or to such person designated in writing by the Liquidating Receiver), possession and legal and equitable title to the assets listed on Attachment B to this Order that the Liquidating Receiver, in its sole discretion, shall determine to have a fair market value in excess of the asset's existing liabilities.  Such transfer shall occur within 30 calendar days of Corporate Defendants' receipt of a written demand from the Liquidating Receiver directing the transfer of an asset listed on Attachment B, or at such other later date as the Liquidating Receiver shall direct, subject to Subsection e., below.

a.    Corporate Defendants shall execute documents, provide information, and produce any title, deed, registration, appraisal, inspection, certificate of insurance, records pertaining to mortgages or liens, or other items reasonably requested by the Liquidating Receiver to determine the value or marketability of any asset or to effectuate the transfer of possession and title of any asset listed on Attachment B.  Corporate Defendants shall comply with such reasonable requests of the Liquidating Receiver within 3 business days of receiving such a request.

b.    Following transfer of title and possession, the Liquidating

Receiver, or the person designated to receive title and possession, shall be responsible for all maintenance, utilities, taxes, insurance, mortgage payments, and all other expenses related to the assets and shall timely make all payments due.

c.     Corporate Defendants represent that no encumbrances to any of the assets listed on Attachment B have been added since the execution of their sworn financial statements dated on June 20, 2016, and that they will not add any encumbrances after signing this Order.  Corporate Defendants further represent that they shall maintain and take no action to diminish the value of any asset listed on Attachment B.

d.     Until Corporate Defendants transfer title and possession of the assets listed on Attachment B, they shall remain current on all amounts due and payable, including but not limited to all tax, insurance, assessments, reasonable and necessary maintenance, and similar fees. Individual Defendant shall notify the appropriate insurance carrier(s) immediately upon entry of this Order of the appointment of the Liquidating Receiver and request that the Liquidating Receiver and Commission be added to any insurance policy covering any asset to be transferred under this Subsection as additional insureds.

e.     The Liquidating Receiver shall have 60 calendar days from entry of this Order to determine the value or marketability and to demand

22

the transfer of possession and title of any asset listed on Attachment B.

6.      Time is of the essence for Defendants' partial satisfaction of the judgment.  In the event that the Individual Defendant or Corporate Defendants fail to timely satisfy any of their respective obligations under Subsection VII.B.1 – VII.B.5, above, and such default continues for 30 calendar days beyond the due date, the entire judgment shall become immediately due and payable by the defaulting Defendant(s), less the amount of any payments made to the Commission in accordance with those provisions.

C.      Upon receipt by the Commission of all payments and by the Liquidating Receiver of all transfers of assets required in Subsection VII.B, above, the remainder of the judgment against Individual Defendant and Corporate Defendants shall be suspended, subject to the Subsections below.

D.      The Commission's agreement to the suspension of part of the judgment against the Individual Defendant and Corporate Defendants is expressly premised upon the truthfulness, accuracy, and completeness of their sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.      The Financial Statement of Corporate Defendant Vemma International Holdings, Inc. signed by Benson K. Boreyko, CEO, on June 20, 2016 including the attachments;

2.      Additional documentation submitted by secure portal and described in an email from Corporate Defendants' counsel Edward A. Salanga to

Commission counsel Thomas B. Carter dated July 11, 2016, consisting of

Corporate Defendants' Consolidating Balance Sheets and Consolidating Income

Statements for the months of March 2015 through May 2016;

3.      Additional documentation hand delivered to Commission counsel

Thomas B. Carter in Phoenix, Arizona, on July 21, 2016, consisting of Corporate

Defendants' Projected Vemma 12 Month Business Plan, August 2016 – July 2017;

4.      The Financial Statement of Individual Defendant Benson K.

Boreyko signed on July 11, 2016, including the attachments;

5.      Additional financial disclosures regarding Financial Statement Item

18, Real Estate, submitted by email dated July 14, 2016, from Individual

Defendant Benson K. Boreyko's counsel Lindsi M. Weber to Commission counsel

Thomas B. Carter;

6.      Additional financial disclosures and documentation regarding

Financial Statement Item 18, Real Estate, and Item 13, Life Insurance Policies,

submitted by email dated July 19, 2016, from Individual Defendant Benson K.

Boreyko's counsel Lindsi M. Weber to Commission counsel Thomas B. Carter,

attaching Columbus Life Insurance policy summaries for 9/3/94 and 5/16/12;

7.      Additional documentation submitted by email from Individual

Defendant Benson K. Boreyko's counsel Lindsi M. Weber to Commission counsel

Thomas B. Carter dated August 5, 2016, attaching Amended Escrow Instructions

and Parcel Map for the San Marcos, California property at the northeast corner of

Twin Oaks Valley Road and Windy Way; and

8.      Additional documentation submitted by email from Defendants'

counsel Edward A. Salanga to Commission counsel Thomas B. Carter dated

August 11, 2016, attaching an Appraisal Of Real Property for the Carlsbad

Property and a Residential Appraisal Summary Report for Individual Defendant's

home at ***** E Gold Dust Ave, Scottsdale, Arizona.

E.      The suspension of the judgment will be lifted as to Defendants if, upon

motion by the Commission, the Court finds that any Defendant failed to disclose any

material asset, materially misstated the value of any asset, or made any other material

misstatement or omission in the financial representations identified above, or that a

Defendant is in default on any obligation under this Section.

F.      If the suspension of the judgment is lifted, the judgment becomes

immediately due as to Defendants in the amount specified in Subsection VII.A above

(which the parties stipulate only for purposes of this Section represents the consumer

injury alleged in the Complaint), less any payment previously made pursuant to this

Section, plus interest computed from the date of entry of this Order.

## VIII.  ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and

interest in all assets transferred pursuant to this Order and may not seek the return of any

assets.

B.      The facts alleged in the Complaint will be taken as true, without further

proof, in any subsequent civil litigation by or on behalf of the Commission, including in a

25

proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

F.

26

## IX.   LIQUIDATING RECEIVER

**IT IS FURTHER ORDERED** that,

A.     The firm of Robb Evans and Associates LLC is appointed Liquidating Receiver with the full power of an equity receiver.  The Liquidating Receiver shall be an agent of this Court, and solely the agent of this Court, in acting as Liquidating Receiver under this Order.  The Liquidating Receiver shall comply with all laws and Local Rules of this Court governing receivers.  Except for an act of gross negligence, the Liquidating Receiver and any professionals it retains to assist it shall not be liable for any loss or damage incurred by Defendants, their agents, servants, employees, and attorneys or any other person, by reason of any act performed or omitted to be performed by the Liquidating Receiver or any professional it retains to assist it in connection with the discharge of its duties and responsibilities.

B.     Upon the transfer of possession of assets pursuant to the Section titled "Monetary Judgment and Partial Suspension," the Liquidating Receiver shall assume responsibility for management and maintenance of the assets of the receivership estate, except as otherwise provided, including, but not limited to: making disbursements for operating expenses as may be appropriate; undertaking repairs; procuring appropriate insurance or modifying existing insurance; making payment for all amounts due and payable, including, but not limited to, taxes, insurance, homeowner's assessments, reasonable and necessary maintenance, and similar fees; and making payments for and taking any other actions necessary to efficiently manage the assets of the estate and to maintain their value.

C.     Except as otherwise provided, the Liquidating Receiver shall have all necessary powers to manage and maintain the assets of the receivership estate including without limitation, the following powers and responsibilities:

1.     To take possession of the assets of the receivership estate.

2.     To employ such counsel, real estate agents, auctioneers, appraisers, accountants, contractors, other professionals, and other such persons, including maintenance and repair persons, as may be necessary in order to carry out its duties as Liquidating Receiver and to preserve, maintain, and protect the assets of the receivership estate.

3.     To bring and defend lawsuits affecting assets of the receivership estate.

4.     To determine or abrogate, in the Liquidating Receiver's sole sound business discretion, to the extent permitted by law, any and all agreements, contracts, understandings, or commitments entered into by Defendants with respect to the assets of the receivership estate.

5.     To open new accounts with, or negotiate, compromise or otherwise modify Defendants' existing obligations to third parties, including utility companies, secured creditors, other service providers or suppliers of goods and services related to the assets of the receivership estate, and to otherwise enter into such agreements, contracts, or understandings with such third parties as are necessary to maintain, preserve, and protect the assets of the receivership estate.

28

      6.     To open new bank accounts with respect to the Liquidating Receiver's management and operation of the assets of the receivership estate.

D.     The Liquidating Receiver shall keep a true and accurate account of any and all receipts and expenditures and periodically file with the Court a Liquidating Receivership Report under oath, accurately identifying all such revenues received and expenditures made, including adequately detailed information concerning income, expenses, payables, and receivables.  These periodic filings shall be served by the Liquidating Receiver on the Commission and Corporate Defendants' and Individual Defendant's counsel of record.

E.     The Liquidating Receiver shall take all necessary steps to enable the assets of the receivership estate to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Liquidating Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B- 2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund.  The Liquidating Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund."

Defendants shall cooperate with the Liquidating Receiver in fulfilling the Settlement Fund's obligations under Treas. Reg. § 1.468B-2.

F.      The Liquidating Receiver shall liquidate the assets of the receivership estate and all net proceeds, after all necessary expenses of the Liquidating Receiver are paid pursuant to this Section, shall be paid to the Commission.

G.      In liquidating the assets of the receivership estate, the following provisions apply:

1.      The Liquidating Receiver shall, at reasonable cost and in a commercially reasonable fashion, liquidate, without further approval from the Court, the assets of the receivership estate for fair market value.

2.      Defendants shall cooperate fully with the Liquidating Receiver and take such other steps as the Liquidating Receiver may require in connection with the listing, marketing, and sale of the assets of the receivership estate.

3.      Defendants shall sign any documents necessary for the sale of the assets of the receivership estate, including, but not limited to, powers of attorney and any documents necessary to effectuate a transfer of any such assets to third parties.  Defendants shall also sign any documents necessary to transfer any accounts, mail, or notices related to the assets of the receivership estate to the Liquidating Receiver.

4.      Defendants shall cooperate fully and not interfere with the Liquidating Receiver's efforts to market and sell the assets of the receivership estate, including, but not limited to, the Liquidating Receiver's efforts to gain

30

access to and show real or personal property to prospective purchasers or brokers, or to evaluate or cause its agents, representatives, or contractors to maintain, repair, restore, and evaluate the condition of the assets.

5.      All ad valorem taxes, any transfer fees, recording fees, other fees, advertising, and any commissions associated with or resulting from the sale of the assets of the receivership estate shall be paid from the proceeds of the sale(s) at the time the assets of the receivership estate are sold.

6.      Defendants shall in no way profit from the sale of any assets of the receivership estate, including by sharing in any sales commission or fee, or by receiving anything of value in kind, except that nothing herein shall be deemed a waiver or otherwise limit Defendants' right to assert applicable state or federal exemptions.  Provided, further, that no provision of this stipulation shall be deemed to enlarge or diminish Defendants' right (or lack thereof) to assert exemptions, under state or federal law, in assets of the receivership estate or to enlarge or diminish the Commission's right (or lack thereof) to challenge such exemptions.

H.      Any and all sums collected by the Liquidating Receiver over and above those necessary to manage and maintain the assets of the receivership estate or those necessary to make payments authorized by this Order shall be paid to the FTC.

I.      The Liquidating Receiver is entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by it.  The Liquidating Receiver's compensation and the compensation

of any persons hired by it are to be paid solely from the income generated by the assets of the receivership estate or the proceeds of the sale of the assets of the receivership estate and other sums collected by the Liquidating Receiver, and such payments shall have priority over all other distributions except for any transfer fees, recording fees, or other payments owed through the transfer of the assets of the receivership estate at the time of their sale.  The Liquidating Receiver shall file with the Court and serve on the FTC and Corporate Defendants' and Individual Defendant's counsel of record periodic requests for the payment of such reasonable compensation.  The Liquidating Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

   J. The Liquidating Receiver shall complete liquidation, transfer all funds to the Commission pursuant to this Section, file its final application for fees, and terminate its service within 180 calendar days of the date of this Order, unless good cause is shown to extend the estate beyond such time.

## X. CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  Defendants represent that they have provided this redress information to the Commission.  If a representative of the Commission requests in writing any

information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 calendar days.

## XI.   TERMINATION OF MONITOR

**IT IS FURTHER ORDERED** that the Monitor must complete all duties within 60 calendar days after entry of this Order, but any party or the Monitor may request that the Court extend that Monitor's term for good cause.

## XII.   ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within 7 calendar days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 20 years after entry of this Order, Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled "Compliance Reporting."  Delivery must occur within 7 calendar days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of

this Order, that Defendant must obtain, within 30 calendar days, a signed and dated acknowledgment of receipt of this Order.

## XIII.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which

such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 calendar days of any change in the following:

1.      Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Individual Defendant must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such

Defendant within 14 calendar days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: *FTC v. Vemma Nutrition Company, et al*. FTC File No. X150057.

## XIV.  RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Corporate Defendants and Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold, including all goods or services sold to participants in a Business Venture;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or

36

position; dates of service; and (if applicable) the reason for termination;

C.       Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.       All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

E.       A copy of each unique advertisement or other marketing material;

F.       A copy of each unique training material; and

G.       Copies of all contracts, agreements, and payment records between Defendants and any participant in Defendants' Business Venture.

## XV.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.       Within 14 calendar days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission also is authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendants must permit representatives of

the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants, or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning the Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XVI.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this** 20th **day of** _December_ **, 2016.**

_____
Honorable John J. Tuchi
United States District Judge

38

**IT IS SO STIPULATED:**

**FEDERAL TRADE COMMISSION**

By _____

Jason C. Moon
Anne D. LeJeune
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
*Attorneys for Plaintiff Federal Trade Commission*


**FOR DEFENDANTS VEMMA NUTRITION COMPANY &
VEMMA INTERNATIONAL HOLDINGS, INC.:**

**QUARLES & BRADY LLP**

By _____          Date: _9/1/16_

John A. Harris
Kevin D. Quigley
Edward A. Salanga
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
*Attorneys for Defendants Vemma Nutrition Co.
and Vemma International Holdings, Inc.*

**DEFENDANTS:**

**VEMMA NUTRITION COMPANY**

By _____          Date: _9/1/16_

**VEMMA INTERNATIONAL HOLDINGS, INC.**

By _____          Date: _9/1/16_

39

**FOR DEFENDANT BENSON K. BOREYKO:**

**GALLAGHER & KENNEDY, P.A.**

By _____     Date: 9/1/16
Lindsi M. Weber
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016-9225
*Attorney for Defendant Benson K. Boreyko*

**BENSON K. BOREYKO**

_____     Date: 9/1/16
BENSON K. BOREYKO, Individually and
as CEO and President of Vemma Nutrition Co.
and Vemma International Holdings, Inc.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Federal Trade Commission**,<br>v.<br>**Vemma Nutrition Company**, *et al*. | **No. CV-15-01578-PHX-JJT**<br><br>**ATTACHMENT A**<br><br>**PROPERTY SCHEDULE OF INDIVIDUAL DEFENDANT BOREYKO'S ASSETS** |

The following are descriptions of Individual Defendant Benson K. Boreyko's assets referenced in the Section titled "Monetary Judgment and Partial Suspension" of the Order:

**A.      Real Property**

1.      Single family residence at **** North Orchard, Mesa, Arizona 85213 (MONTANA DORADA MCR 567-24).

2.      Approximately 1.61 acres of vacant land at the northeast corner of Twin Oaks Valley Road and Windy Way, San Marcos, California (APN: 21B-120-30-00).

**B.      Personal Property & Other Financial Interests**

1.      2013 E-Z-Go Express L6 (Model No. 618866G01) golf cart, Serial No. 3037594.

2.      All assets of the San Marcos Properties Limited Partnership.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

**Federal Trade Commission**,
v.
**Vemma Nutrition Company**, *et al.*

**No. CV-15-01578-PHX-JJT**

**ATTACHMENT B**

**PROPERTY SCHEDULE OF CORPORATE DEFENDANTS' ASSETS**

The following are descriptions of Corporate Defendants' personal property referenced in the Section titled "Monetary Judgment and Partial Suspension" of the Order:

1.  Verve Bold Chopper – Motorcycle (black), Vin No. CE12S8936, acquired from East Texas Choppers on 10/31/2013 for $20,000.

2.  East Texas Choppers – Motorcycle (orange), Vin No. CE09J3607, acquired from East Texas Choppers on 10/25/2010 for $22,000.

3.  Massage chair acquired on 8/1/2014 for $4,317.

4.  6 acrylic on wood box Abstract Framed Pictures by the graphic design firm of "art2uinc," that were acquired in 2014 for $32,708, with the following dimensions: 60 x 30 inches; 60 x 30 inches; 84 x 30 inches; 72 x 30 inches; 48 x 96 inches; and 30 x 48 inches.

5.  25 canvas wrapped on a hollow wood frame Abstract Framed Pictures by the graphic design firm of "art2uinc," that were acquired in 2014 for $74,329, each with the dimensions 48 x 48 inches.